[Phœnix Insurance Co. v. Boulden.]

96 609
114 359

# Phœnix Insurance Co. *v.* Boulden.

*Action on Policy of Insurance Against Fire.*

1. *Contract dated on Sunday; when not void.*—In an action on a policy of insurance, where the defendant pleads a breach of a condition against over-insurance, a policy dated on a Sunday, but which was not, in fact, either made out or delivered on Sunday, but on a judicial day, must be computed in determining whether there has been a breach of the condition against over-insurance in the policy sued on.

2. *Mistake in draft of contract; when corrected by other terms of the contract.*—A policy of insurance issued and dated October 28, 1890, "for the term of one year from the 28th day of October, 1890, to the 28th day of October, 1890," shows on its face that a mistake was made in the draft of it, in making the date of its expiration the same as the date of its issue ; and such policy is construed to be "for the term of one year" from the date of its issue.

2. *Fire insurance policy ; condition against over-insurance; what is not breach of.*—A condition against over-insurance in a fire insurance policy is not broken by the assured, through a mistake and want of knowledge as to the amount of insurance he had already obtained, obtaining insurance beyond the prescribed limit ; but the burden is upon the assured to prove such mistake and want of knowledge ; and ignorance of the facts does not legalize the insurance in excess of the authorized limit.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES B. HEAD.

This was an action brought by the appellant, Charles M. Boulden, against the appellee, the Phœnix Insurance Company, upon a fire insurance policy, seeking to recover for the destruction by fire of a building covered by said policy. The defendant filed several special pleas ; among them, one setting up that "it was a condition and stipulation in said policy, inducing the defendant to the making and delivery of the same, that the said policy should be and become void, if the assured should have, or afterwards make, any other insurance, whether valid or not, on the property therein specified, or any part thereof, without the consent of the defendant, written on said policy ; and the defendant says that plaintiff did make other insurance on the property in said policy specified, without the consent of the defendant written on said policy." A demurrer to plaintiff's special replication to this plea was overruled, and the case was tried upon issue joined upon the pleas and upon the replications thereto. On the evidence adduced, the court, on request,

gave the general affirmative charge for the defendant. The plaintiff duly excepted to this ruling. He appeals, and assigns as error the several rulings of the court which are considered in the opinion.

CHISOLM & WHALEY, and CHARLES B. POWELL, for appellant.

LEA & BELL, contra.

STONE, C. J.—The subject of insurance in this case was the same building situated near East Lake, Jefferson county, the burning of which gave rise to the appeal recently decided in this court, in which The Liberty Insurance Company of New York was appellant, and Boulden the appellee. The pleas in this case were in many respects the same as those interposed in the former one, but it was decided in the Circuit Court on a different issue. The case of *The Liberty Insurance Company v. Boulden, ante,* 508, went off on the question of the latter's ownership of the land or lot on which the insured building stood. That question—the nature of Boulden's ownership of the lot—presented the pivotal issue on which we decided the case. The record in that case disclosed the exact status and imperfect nature of Boulden's ownership. Those facts are not shown in the record before us. In that case the policies sued on were obtained from Adams & Co., who were shown to have been the resident agents of the two companies there sued, and to have acted for the insurance companies in the issue of the policies. Martin & Leedy were the resident agents of the Phœnix Insurance Company, at Birmingham, and the policy here sued on was obtained from them. A further difference : In the case of The Liberty Insurance Company the policy is set out *in extenso.* It contains this provision : "This entire policy, unless otherwise provided by agreement endorsed hereon, or added hereto, shall be void . . . if the interest of the insured be other than unconditional and sole ownership; or, if the subject of the insurance be a building on ground not owned by the defendant in fee simple." In the present case the policy is not set out *in extenso.* If the policy states or affirms the nature or extent of Boulden's title to, or interest in the lot of ground, the record does not inform us of it.

In the former case—*Liberty Insurance Company v. Boulden*—we made some reference to the agency performed by Adams & Co. in placing insurance on the building, the burning of which gave rise to these suits. The testimony dis-

closes the following state of facts: Adams & Co. were insurance agents, having their office in Birmingham. In 1889, they were applied to by Boulden for insurance, and had placed insurance on the building, the amount not shown. The insurance having expired, Boulden in October, 1890, went again to Adams & Co. to obtain renewed insurance. The building was valued at something over twenty thousand dollars, and it was agreed that fifteen thousand dollars of insurance should be placed upon it; but no greater amount was to be so placed. So, a clause was inserted in each of the policies that fifteen thousand dollars was the maximum sum of permissible concurrent insurance. The clause in the policy issued by The Phœnix Insurance Company is in this language: "$15,000 total concurrent insurance permitted." Of this sum Boulden obtained from Adams & Co., insurance agents, two policies issued by the two insurance companies represented by them, the aggregate of the amount so insured being forty-five hundred dollars. For this sum two policies, one in the City Insurance Co. of New York, and the other in the Scottish Union and National Insurance Co. of Edinburgh, Scotland, were issued by and through Adams & Co., insurance agents. Boulden then requested Adams & Co. to place the balance of the insurance he was permitted to take out — (the balance of the fifteen thousand dollars)—in other insurance companies. This they agreed to do, and did do, and in this way they obtained for him from the agents of the Phœnix Insurance Company the policy which is the foundation of the present suit. This policy is for the sum of two thousand dollars. They, Adams & Co., in pursuance of Boulden's request, obtained for him several other policies, issued by other companies, which, including the forty-five hundred dollars issued by the companies of which they were agents, amounted to fifteen thousand dollars, the limit of permissible, concurrent insurance.

These several policies, aggregating fifteen thousand dollars, were delivered to Boulden by Adams & Co., the agents, at one and the same time, and he paid them the premiums, something over three hundred dollars on the entire lot. In delivering the policies to Boulden, Adams informed him that the policies amounted to only twelve thousand five hundred dollars, thus leaving his insurance two thousand five hundred below $15,000, the aggregate of the insurance he was permitted to place on the property. Thereupon, Boulden proceeded to R. S. Knott & Co., agents of the Syndicate Insurance Company of Minneapolis, Minnesota, and obtained from them a policy of insurance in said company on the

[Phœnix Insurance Co. v. Boulden.]

same property, covering the time when the house was burned; said policy being for the sum of twenty-five hundred dollars. That policy also contained the stipulation, "$15,000 total concurrent insurance permitted."

It must be borne in mind that when Adams delivered the policies to Boulden—the policies which covered the period of the burning—he informed him that the aggregate of their several amounts was $12,500, being $2,500 less than the $15,000 permitted to be placed on the property. If the information Adams gave Boulden had been correct, the policy of $2,500 which the latter obtained from the Syndicate Insurance Company in May, 1891, would have just reached the permitted limit of $15,000 of insurance on the property, expressed and limited in the several policies.

The defense relied on in this case, and which succeeded in the Circuit Court, was that Boulden, in obtaining the policy from the Syndicate Insurance Company for $2,500, exceeded by that sum the limit which had been prescribed and permitted in the former policies, and for that reason had forfeited all right to recover on those former policies, including the one sued on in this case.

The reply to this defense of over-insurance assumed two forms. First, it was contended that some of the policies which were estimated in making up the prior insurance of $15,000 were void on their faces, and therefore their several amounts should not, and could not be computed or embraced in the calculation, And, first, the two policies issued by The Liberty Insurance Company of New York, and by The Scottish Union & National Insurance Company of Edinburgh, Scotland, aggregating $4,500, bore date October 19, 1890, which was a Sunday. This, it was contended, rendered them void on their faces, and hence they were no impediment to plaintiff's right of recovery. If it be true that these policies were void because issued on Sunday, then Boulden did not have or acquire legal or valid insurance on his house in excess of $15,000. It was shown, however, that although the policies bore a date which was a Christian Sabbath, they were not, in fact, either made out or delivered on Sunday, but on a judicial day. The date, October 19, 1890, was affixed to them, because that was the day the former policies expired. There was nothing in this feature of the replication.—*Aldridge v. Br. Bank of Decatur*, 17 Ala. 45 ; *Burns v. Moore*, 76 Ala. 339 ; 1 Greenl. Ev. § 285.

Another feature of the replication to the plea of over-insurance was rested on the policy for $2,500, issued by The Home Protection Insurance Company, of Huntsville, Ala-

bama. That policy was for $2,500, and if it could be properly eliminated from the computation, then the whole insurance on the building, including the policy issued by the Syndicate Insurance Company, the last in point of time, was not in excess of $15,000, the stipulated limit. In fixing and defining the term for which that policy should be operative and binding, the following clause appears in the body of it : "Do hereby agree to indemnify C. M. Boulden against all such immediate loss or damage as may occur by fire and lightning to the property  ·  ·  ·  for the term of one year from the 28th day of October, 1890, at 12 o'clock noon, to the 28th day of October, 1890, at 12 o'clock noon." So, according to the letter of the policy, it expired at the precise instant of time at which it was issued. If this policy was inoperative when the policy of the Syndicate Insurance Company was issued, then there was no over-insurance, and consequently nothing in that line of defense.

We can not assent to the contention that the Home Protection policy is void for the reason stated. It proves conclusively on its face that a mistake was made in the draught of it. A policy "for the term of one year" can not expire on the date of its issue. It being shown that it was issued in October, 1890, it must necessarily expire in 1891. Consequently, if the mistake referred to was its only imperfection, it was in force when the house was destroyed by fire in June, 1891. In neither of the aspects mentioned above was the replication a sufficient answer to the defense of over-insurance. And this brings us up to the last ground, on which plaintiff contends he should not be barred of his recovery by reason of the excessive insurance held by him.

We have stated that Boulden obtained his first two policies from Adams & Co., and in companies of which they were agents. These policies amounted to $4,500, and the circumstances tend to show they were renewals. We have also stated that Boulden requested Adams & Co. to place the residue of his permitted insurance—$10,500—in other companies, and that they proceeded to do so. We have shown above that one of the policies so taken out by them was in the Home Protection Insurance Company, and that that policy expressed on its face that it was to run for a term of one year from its date, while its express language was that it expired at the very moment it was issued and bore date. In other words, it expressed on its face that it insured the building from 12 o'clock noon of October 28, 1890, to 12 o'clock noon of October 28, 1890. On the back of this policy and exposed to view when folded, the following indorsement

had been made by Terry & McDavid, agents of the company, when they folded it up for delivery: "No. 88,660. Home Protection of North Alabama, Huntsville, insures C. M. Boulden against fire and lightning; amount insured $2,500 —premium $65.50, expires 10–28, 1890. Terry & McDavid, agents." We have also stated that when Adams & Co. delivered the policies, seven or eight in number, to Boulden, they informed him the aggregate amount of them was $12,500, and that he wanted $2.500 of having as much insurance on the property as he desired, and was permitted to have. After obtaining this information, Boulden sought and obtained the $2,500 policy from the Syndicate Insurance Company. This last policy, it will be noted, is the one which it is claimed swelled the amount of insurance above the limit, and vitiated the other insurance.

As a reply to the defendant's plea of over-insurance, the plaintiff sought to introduce the foregoing facts, and with them the testimony of Adams, the agent, setting forth that before delivering the policies to Boulden, he had added together the several sums of the policies, and and had reached the conclusion that the whole amount was only $12,500; that in making this calculation he had included the policy insured by the Home Protection Company, thus treating it as an expired policy, as the indorsement upon it showed it to be. Their testimony, on motion, was excluded by the court, and the plaintiff excepted. The manifest purpose of the testimony thus offered was to convince, or attempt to convince the jury that plaintiff had not intentionally or knowingly over-insured his property, but that he had been led into it by the mistake of Mr. Adams.

The *rationale* of the rule which forbids excessive insurance must be, and is, that, to allow it, would be to offer an inducement to persons so insured to destroy their own property. It seeks to maintain in the insured an interest in the preservation of the property, which will stimulate care and watchfulness. Hence, what is known as the three-quarter rule. Insurance companies require that the owner of the property shall carry one-fourth of the risk. If the insured, however, does not know he is over-insured—is ignorant that he is not carrying his proportion of the risk—can that unknown fact make him less watchful, less solicitous for the preservation of the property? There can be but one negative answer to this question. If Boulden was ignorant that the sum of his policies exceeded fifteen thousand dollars, even though he was in error, such excess could not have influenced his conduct. The Circuit Court erred in not allow-

[Copeland v. Phœnix Insurance Co.]

ing this line of defense ; but the burden of proving his mistake and want of knowledge rested on the plaintiff.

We desire not to be misunderstood. We do not hold that a policy in excess of the authorized limit taken out through mistake, and in ignorance of the facts, is thereby rendered collectible. We hold the contrary. Mistake, or ignorance of the facts, no matter how blameless that mistake may be, can not legalize a contract of insurance that is in excess of the authorized limit. To allow it would be too perilous. All we decide is, that excessive insurance, applied for and obtained through mistake, such as is contended for in this case, does not *per se* vitiate older insurance, if otherwise legal and binding.—Wait Ac. & Def. 57-8

Reversed and remanded.

WALKER, J., not sitting.