The facts out of which this litigation arose are largely undisputed. The McCurrys bought two lots and built a house on them. They obtained a construction loan from the First National Bank of Piedmont and secured the loan by a mortgage on the property. They also obtained insurance from Farm Bureau, which issued a policy in the amount of $20,000 to the McCurrys and the First National Bank as mortgagee, with an effective date of December 1, 1973, through December 1, 1974.
After the house was completed, but before the McCurrys moved in and before the loan for permanent financing was closed, they insured the property for $36,000 with Auto-Owners Insurance Company. The Auto-Owners policy was issued April 15, 1974. On May 1, 1974, at approximately 2:00 p.m., McCurry called the local office of Farm Bureau and advised that he had procured other insurance and wished to cancel the Farm Bureau policy. The insured premises were totally destroyed by fire some five hours after this call, at around 7:30 p.m., May 1, 1974.
On May 10, 1974, after notice of the fire, Farm Bureau wrote the McCurrys a letter stating that the Farm Bureau policy had been cancelled as of May 1 and enclosed a check for premium refund from May 1 to the end of the policy period. The McCurrys refused the refund.
Thereafter, the McCurrys made demand on both Farm Bureau and Auto-Owners for payment of the loss. Auto-Owners agreed to pay a part of the loss, $22,254.65, the amount of the mortgage debt due the First National Bank, although it was not the mortgage payee under the Auto-Owners policy. Collateral Investment Company was the named mortgagee under the Auto-Owners policy, but it never closed the permanent loan with the McCurrys. The McCurrys used this amount to pay the mortgage debt to First National and in return received from First National an assignment of its rights under the Farm Bureau policy.
The McCurrys then filed a bill for declaratory judgment against Farm Bureau and Auto-Owners asking the court either to *Page 1111 
require Auto-Owners to pay the full amount of its policy or, alternatively, to require both companies to pay their respective pro rata share of the loss. Farm Bureau denied any liability and Auto-Owners denied any more than its pro rata share, contending that Farm Bureau should pay its pro rata share.
After hearing the evidence, the trial court found that both policies were in effect at the time of the loss; that the Farm Bureau policy could not be cancelled before 2:01 p.m. on May 2, 1974; that the "other insurance" provision of the Farm Bureau policy was ineffective under the facts of this case; that both policies contained a "pro rata" clause, and ordered Auto-Owners to pay the McCurrys $24,600 (against which it was granted a credit of $22,254.65 already paid) and Farm Bureau to pay $13,860.
Farm Bureau appealed and raises the same issues here as it relied upon below:
The "other insurance" defense. Farm Bureau argues that the trial court erred in not granting its motion to dismiss and motion for summary judgment, since it is not disputed that the McCurrys had other insurance at the time of the fire. The Farm Bureau policy contains the following provision:
 "Other Insurance. Unless otherwise provided in writing added hereto, other insurance covering on any building which is covered under this policy, is prohibited. If, during the term of this policy, the Insured shall have any such other insurance, whether collectible or not, and unless permitted by written endorsement added hereto, the insurance under this policy, insofar as it applies to the building(s) on which other insurance exists, shall be suspended and of no effect."
It is Farm Bureau's contention that coverage under its policy was automatically suspended when the Auto-Owners policy became effective. This result is compelled, argues Farm Bureau, if the quoted provision is to have any meaning. We cannot agree. It is true that such provisions have frequently been held valid. But one must look to the reasoning behind the inclusion of such provisions in insurance policies to find the reason why courts, in appropriate cases, have upheld them. The basic purpose of such provisions is to check fraud. It was recognized very early that unlimited property insurance could serve as an inducement to an insured to destroy his own property to his profit.
As early as 1917, this court recognized the reason for the provisions limiting one's ability to overinsure and said inInsurance Company of North America v. Williams, 200 Ala. 681,683, 77 So. 159, 161 (1917):
 "The purpose of overinsurance limitations in policies is to prevent fraud. The public, as well as the assurer, is interested in preventing a situation in which a fire would be profitable to the assured. Such clauses in insurance policies ought to receive a fair and reasonable interpretation, according to their terms and obvious import. . . ."
We think that statement is still sound, but do not agree that procuring additional insurance with no intent to defraud automatically suspends coverage as Farm Bureau asserts.
In Home Insurance Company v. Shriner, 235 Ala. 165,177 So. 890 (1937), this court refused to hold that such a provision defeated coverage where there was no evidence of a fraudulent intent on the part of the insured in procuring other insurance. There, the court said:
 "If the insured at the time of the fire does not know that he is overinsured, is ignorant that he is not carrying his proportion of the loss as agreed upon, the fact that there is such unknown to him is not an inducement to him to destroy his property, and not within the purpose of the policy requirement. Phoenix Ins. Co. v. Boulden, 96 Ala. 609, 614, 11 So. 774. . . ." (Emphasis Supplied) (235 Ala. at 172, 177 So. at 895.)
There was no evidence that the McCurrys intended to defraud either Farm Bureau or Auto-Owners in this case. The trial court so found. But there are additional reasons *Page 1112 
why Farm Bureau cannot prevail in its argument. First, the policy issued by Farm Bureau extended protection to the First National Bank of Piedmont as mortgagee of the property, and provided:
 "Loss, if any, on building items under this policy, shall be payable to the mortgagee . . . as interest may appear, and this insurance, as to the interest of the mortgagee . . . shall not be invalidated by any act or neglect of the mortgagor as owner . . ."
(Emphasis Supplied)
If no act of the owner (McCurry) can invalidate the coverage extended to the mortgagee (First National Bank of Piedmont) by the policy, it follows that the owners' procurement of other insurance cannot have this effect.
Secondly, the Farm Bureau policy contained the following provision:
 "Pro rata liability. [The Insurer] shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not."
This provision, when read with the prohibition against other insurance, creates an ambiguity which must be resolved against the insurer. American Insurance Company v. Newberry, 215 Ala. 587,112 So. 195 (1927).
Farm Bureau next argues that if its policy was not cancelled by virtue of the other insurance provision, it was cancelled by McCurry himself on May 1. The trial court, after hearing the evidence, determined that the policy had not been cancelled by McCurry. We agree. Indeed, under the terms of the policy, McCurry could not cancel the coverage extending to the mortgagee. Additionally, the cancellation provisions of the policy were not complied with. The policy specifies the methods by which it can be cancelled.
 "Cancel[l]ation. This policy may be canceled by the named insured by mailing to the Service [Farm Bureau] written notice stating when thereafter such cancel[l]ation shall be effective. This policy may be canceled by the Service by mailing to the named insured, at the latest address shown in the records of the Service, written notice stating when not less than ten days thereafter such cancel[l]ation shall be effective."
Farm Bureau concedes that these provisions were not complied with but contends that the policy could be cancelled by other methods. It is true that the method of cancellation provided for in a policy of insurance is not necessarily exclusive and that the parties to such a policy may mutually agree to cancellation by other means. Such a procedure must be mutually agreed upon. 29 Am.Jur.2d, Insurance, § 408, et seq. Whether there is such assent is a question of fact. The trial court, in the instant case, determined that there was no cancellation. We cannot conclude that the trial court was wrong in this determination.
Lastly, Farm Bureau contends that the McCurrys cannot pursue the proceeds of the policy under the assignment from the First National Bank of Piedmont. It contends that the assignment is void because, since the mortgage was paid, they ". . cannot thereafter take an assignment of a debt and mortgage that no longer exists." The McCurrys are not attempting to collect a debt and mortgage that have been paid. They are attempting to enforce the rights of the First National Bank under the Farm Bureau policy. The assignment recites in part:
 ". . . the First National Bank of Piedmont . . . does hereby transfer and assign unto Terry McCurry and Sandra McCurry . . . all of the right, title and interest of [the bank] . . . in and to any and all claims or causes of action held by [the bank] against the said Alabama Farm Bureau . . . based upon the aforesaid policy of insurance."
The bank was a named insured under the policy, which covered the interests of the owners and the mortgagee. The bank was a named loss payee under the policy. In fact, since the mortgage debt exceeded the policy amount, it was, as a practical matter, *Page 1113 
the sole loss payee at the time of the loss. It, therefore, had a valid claim under the policy which is assignable. In 43 Am.Jur.2d, Insurance, § 689, the rule is stated as follows:
 "There seems to be no dissent, except in a very few early cases, from the judicial or statutory rule that after a loss in respect of insured property has been incurred, the claim to recover that loss may be effectively assigned by the insured, so as to vest in the assignee the absolute right to the insurance, provided, of course, the insured himself had that right at the time when the loss was incurred, and the assignment itself was otherwise valid. . . . It is likewise the general rule that after the event has occurred by which liability . . . is fastened upon the insurer, the policy or rights thereunder may be assigned with or without the consent of the insurer; in such case, it is not the personal contract which is being assigned, but a claim under or a right of action on the policy. . . ."
We find no error to reverse. Therefore, the judgment of the trial court is affirmed.
AFFIRMED.
MADDOX, JONES, EMBRY and BEATTY, JJ., concur.