The United States District Court for the Southern District of Alabama, through the Honorable Virgil Pittman, Senior Judge, has certified to us certain questions which arise out of the following facts:
Joyce Newton was an employee of Dr. William J. Hooper, a Bay Minette, Alabama, dentist. Dr. Hooper contracted with United Chambers Insured Plans (United) for group medical insurance for himself and his dependents and his employees and their dependents. Dr. Hooper paid the premiums; the employees did not contribute in any way.
The policy provided benefits for covered medical expenses. Specifically, Joyce Newton had Plan V, coverage which paid 80% of the first $3,000 of covered expenses exceeding the annual deductible of $100 and 100% of further expenses in excess of $3,000, up to a maximum benefit of $1 million.
The policy became effective on September 1, 1982. On October 2, 1982, Mrs. Newton's teenage son, Tracy, was involved in an automobile accident which left him paralyzed for life. He was rendered "totally disabled" as that term is defined in the policy.
Following the accident, Mrs. Newton began filing claims for medical expenses incurred for Tracy's treatment. The payment of these benefits was coordinated with benefits available for Tracy's expenses through his father's group insurance carrier, Blue Cross-Blue Shield, pursuant to a provision in the United policy. Under that policy, United was responsible for covered expenses not covered by the Blue Cross-Blue Shield policy, not to exceed 100% of total expenses, up to the policy limits. *Page 1149 
The premium on the policy was payable monthly. Dr. Hooper made each payment until March 1983, when his check for the premium was returned for insufficient funds. Under the policy, coverage was automatically terminated at the end of the month in which no premium was paid. Mrs. Newton was unaware of the termination of coverage until June or July 1983. She continued to incur expenses for Tracy's medical treatment after March 31, 1983. United rejected claims for these expenses because they were for charges incurred after the termination date of the policy.
In August 1983, Mrs. Newton sought to reinstate the coverage or to convert to individual coverage under the conversion provisions of the policy. United informed her again that the policy had terminated as of March 31, 1983, and also informed her that the policy did not allow conversion under these circumstances. It also denied coverage under the extended benefits provision of the policy. United denies that any amount is due under the policy. Mrs. Newton thereupon filed this action, in which she contends that her son's medical expenses are covered under the policy. She also asks the Court to order United to permit her to convert to individual coverage under the conversion provisions of the policy.
The federal court asks us whether under Alabama law United was required to give notice of the employer's default in paying premiums to participants in the group policy under these facts and whether there is a right of conversion under these facts.
As the federal court observed, this Court has not had occasion to address the question of whether a group insurer must notify a participant of termination of the policy for non-payment of the premium where the covered employee does not contribute to the premium. We have held that a participant is entitled to notice of changes made in a group policy in a case where the employee did pay part of the premium. Harrison v.Insurance Company of North America, 294 Ala. 387, 318 So.2d 253
(1975). A sounder basis for requiring notice to the employee of changes in or cancellation of the policy than the fact that he pays part of the premium is the fact that he has an interest in the policy which will be affected. Whether one pays part of the premium for medical coverage or whether it is a fringe benefit paid for by his employer, it is a valuable part of his compensation, and if it is cancelled or terminated, he has a right to notice of that fact.
Our cases have recognized the right to notice under some circumstances. Harrison, supra, required the insurer to give notice to the employee of a change in coverage which adversely affected the employee's coverage. Harrison relied on Shears v.All States Life Ins. Co., 242 Ala. 249, 5 So.2d 808 (1942), and said:
 "`The policy may be allowed to lapse by non-payment of premiums by the employer, or the insurer may cancel it for that reason, or it may terminate upon the expiration of its term without action on the part of anyone, or upon the termination of the employee's employment, because the contract so provides. Undoubtedly, where the employee contributes to the premium payment, he should have something to say regarding the cancellation; at least where the cancellation is by the affirmative action of either the insurer or the employer or both. Under such circumstances, he has more than the interest of a third party beneficiary. He has an interest obtained through an expenditure of his own money. He must be regarded as a party to the insurance contract at least to the extent that the group policy cannot be cancelled without his consent.'
 "Poch v. Equitable Life Assur. Society, 343 Pa. 119, 22 A.2d 590, was relied on in Shears, and the following statement from the Supreme Court of Pennsylvania was approved:
 "`. . . "Upon a review of the authorities, and upon reason as well, our conclusion is that, under a group policy like that now before us [and in all material respects like the one involved here], the insured employee must be *Page 1150 
regarded as a party to the insurance contract at least to the extent that the group policy cannot be cancelled or any of its effective provisions eliminated by either the employer or insurer, except in a manner provided by the policy, without giving such employee notice of the intended cancellation or modification, so that he may timely exercise any conversion privilege which may be available to him under the terms of the policy or, where such privilege is not given, in order that he may seasonably obtain similar insurance protection on his own account elsewhere; further, that in the absence of notice, an agreement of cancellation or modification like that here entered into between the Association [employer] and the Society [insurer] is, as to such employee, legally ineffective to relieve the insurance company from liability under the original policy."' (242 Ala. at 254, 5 So.2d at 812)
 "Shears was closely examined by the Court of Appeals in Metropolitan Life Ins. Co. v. Korneghy, 37 Ala. App. 497, 71 So.2d 292 (1954). In Korneghy, the insured employee received written notice of the termination of the group coverage, but contended that it could not be terminated without his consent. The Court of Appeals held that a group policy could be terminated without the consent of the insured but said:
 "`Our diligent study of the authorities leads us to the conclusion that a majority of the appellate courts of the country hold to the view that, under factual circumstances analogous to those in the case at bar, timely notice should be given the insured of any amendments to or cancellation of the master group policy.
 "`While we are not called upon at this time to declare that we adopt this rule, we are frank to state that it certainly seems to be more in accord with fair treatment of the insured employee.' (37 Ala. App. at 506, 71 So.2d at 301)
 "This court, in Hill v. Metropolitan Life Ins. Co., 266 Ala. 285, 96 So.2d 185 (1957), held that the Court of Appeals correctly construed Shears on the issue of consent of an insured to the cancellation of a group policy.'"
294 Ala. at 392-93, 318 So.2d 258-59. (Bracketed material added in Harrison.)
It is quite true, as United argues, that we have held that a participant in a group policy is entitled to notice of cancellation of the policy where he pays a part of the premium. It is equally true, however, that we have stated that the reason for requiring notice is so that he may take advantage of any conversion privileges afforded by the policy, or to seek to obtain coverage elsewhere. We hold, therefore, that a group insurer is required to notify a participant of cancellation or modification of the policy if the interests of the participant are adversely affected thereby.
Here, the policy coverage terminated because the employer failed to pay the premium on the policy due in March 1983. We must now determine what rights, if any, would have been available under the policy had the employee received notice.
Each employee covered by the master policy was given a "Group Insurance Certificate" booklet, which contains a summary of the master policy. The medical conversion privilege provision reads as follows:
"MEDICAL CONVERSION PRIVILEGE
 "In the event that your or your insured Dependent's Comprehensive Medical Coverage under the Policy terminates for any reason other than (1) the termination of this Policy, (2) termination of an eligible class of insured persons, (3) termination of your Covered Employer's participation in UCIP and this Policy, or (4) termination of Participant or Dependent insurance without termination of employment with a Covered Employer because you voluntarily stop making any required contributions for insurance while still eligible for it, you or your insured Dependent shall be entitled to continue, without *Page 1151 
evidence of insurability, a plan of comprehensive medical insurance, the terms of which shall be the same as the plan of Comprehensive Medical Coverage (without Optional Benefits) under which you and your insured Dependents were covered prior to becoming eligible for the privilege of conversion.
 "You must cover the insured Dependents who were covered prior to the time you become eligible for conversion and cannot add any Dependents who were not insured under this Policy.
 "Conversion is available to your insured Dependents if your insurance is terminated because of your death and to your insured Dependent Children who attain the age specified in the Policy and cease to be eligible Dependents. The right of conversion shall not be available to any Participant or insured Dependent if termination of coverage occurs after you or your insured Dependents become eligible for Medicare.
 "The premium payable for coverage under these provisions shall be at the Insurance Company's premium rate applicable to the class of risk to which you then belong and to your age on the effective date of the converted coverage. Any conversion rights under these provisions must be exercised within 31 days of the date your coverage ceases under the covered Employer's Agreement or this Policy."
We have carefully studied this provision and must conclude that it does not entitle either Mrs. Newton or her dependent son to continue the medical coverage afforded by the policy. The privilege of conversion does not apply where the policy terminates for the reason that this policy terminated, i.e., failure to pay the monthly premium.
There is, however, another provision of the policy which applies to the facts involved here. As noted earlier, Tracy Newton, a dependent as defined in the policy, is totally disabled. The extended comprehensive medical benefits provision of the policy is summarized in the certificate booklet as follows:
"EXTENDED COMPREHENSIVE MEDICAL BENEFITS
 "No benefits will be payable to you or your insured Dependent after insurance terminates, except that:
 "(1) benefits will be payable for charges incurred or services performed before the termination of insurance;
 "(2) if at the time insurance terminates you or your insured Dependent are Totally Disabled . . . because of a disability which began while insured, you or your insured Dependent will be entitled to such benefits after termination of insurance as would have been payable under the Policy for the Injury or Sickness which caused the Total Disability except for the fact that insurance terminated; however, the extension of benefits will not apply after the earliest of the following dates:
 "(a) the first date on which you or your insured Dependent are not Totally Disabled;
 "(b) the date at the end of the period of time immediately following the date insurance terminated which is equal to the number of months that you were continuously insured immediately before termination of insurance;
 "(c) the date you or your insured Dependent become covered or insured under any other group policy (whether issued by the Insurance Company or any other insurer) or any group basis service or prepayment plan; or
"(d) 90 days after insurance terminates."
When Mrs. Newton sought extended coverage for her totally disabled son under this provision, United refused to extend coverage, contending that because Tracy was covered as a dependent under his father's Blue Cross-Blue Shield group policy, paragraph (c) precluded extended coverage under United's policy. Paragraph (c) is susceptible of being read to say that extended coverage terminates at a date in the future when the insured or the *Page 1152 
dependent becomes (sometime after termination of the policy) covered by another insurer. If it means there is no extended coverage for persons who are already insured by another insurer at the time of termination, as United contends, it would have been simple to say so. United created the ambiguity, so it must accept the construction most favorable to the insured.Employers Ins. Co. of Alabama, Inc. v. Jeff Gin Co.,378 So.2d 693 (Ala. 1979); Alabama Farm Bureau Ins. Co. v. McCurry,336 So.2d 1109 (Ala. 1976).
We hold that United was required to notify Mrs. Newton that the policy terminated on March 31, 1983, and that her dependent son is now entitled to the extended medical benefits provided for by the extended comprehensive medical benefits provision of the policy.
We acknowledge that our treatment of the issues disregards to some degree the exact questions certified to us. However, we were expressly invited by Judge Pittman to respond in this manner. In his certification of the questions, Judge Pittman wrote:
 "Our statement of these questions is not designed to limit the inquiry of the Supreme Court of Alabama.
 "`[T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.'
 "Martinez v. Rodriquez, 394 F.2d 156, 159 n. 6 (5th Cir. 1968)."
CERTIFIED QUESTIONS ANSWERED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, BEATTY, ADAMS and HOUSTON, JJ., concur.
ALMON, J., not sitting.