**GEM INSURANCE COMPANY, a Utah corporation, Plaintiff,**

**v.**

**EDWARD T. HAYES TRANSPORTING, INC., Defendant.**

No. 2:95–cv–354W.

United States District Court, D. Utah, Central Division.

March 6, 1997.

Kevin J. Fife, David Leo, Cohne, Rappaport & Segal, Salt Lake City, UT, for Plaintiff.

Brian S. King, King & Isaacson, Salt Lake City, UT, for Defendant.

*MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

WINDER, Chief Judge.

This matter is before the court on Plaintiff Gem Insurance Company's ("Gem Insur-

ance") motion for partial summary judgment and Defendant Edward T. Hayes Transporting, Incorporated's ("Hayes Transporting") cross-motion for summary judgment. The court held a hearing on both motions on January 29, 1997. At the hearing, Kevin J. Fife and David Leo represented Gem Insurance and Brian S. King represented Hayes Transporting. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. The court had also read certain of the authorities cited by each of the parties. Following oral argument, and after taking the matter under advisement, the court has further considered the law and facts related to the motions. Having now fully considered the issue in this case, and good cause appearing, the court enters the following memorandum decision and order.

## I. BACKGROUND

In August 1994, Hayes Transporting established an employee welfare benefit plan ("the plan"). Pursuant to the plan, Hayes Transporting obtained group health insurance coverage for its employees and their dependents from Gem Insurance. Hayes Transporting would pay a portion of each employee's insurance premium and deduct the remaining portion from each employee's paycheck. Hayes Transporting would then forward the entire premium amount for all employees and their dependents to Gem Insurance.

The plan provided that premium payments were due to Gem Insurance on the first day of each month. The plan also provided a grace period of thirty-one days beginning with the date the premium payment was due. The plan stated:

> The contribution is due monthly and is payable on the selected premium due date. If the contribution is not paid by the thirty-first day following the premium due date for which the contribution is due, coverage will automatically terminate effective the last day of the month for which full and complete contributions have been received.

Hayes Transporting did not make its October 1, 1995, premium payment within the thirty-one-day grace period which ended November 1, 1995. Instead, Hayes Transporting sent the October 1, 1995, premium payment to Gem Insurance on November 22, 1995. On December 1, 1995, Hayes Transporting received a "Notice of Cancellation" from Gem Insurance dated November 22, 1995. The Notice of Cancellation provided: "Effective as of the above-referenced termination date [10/01/1995], the insurance policy issued to your firm was terminated for non-payment of premium. Claims incurred after the termination date are not eligible for benefits." Gem Insurance eventually returned the October 1, 1995, premium payment to Hayes Transporting on January 22, 1996.

During October and November 1995, the family of Dale Koeven, a Hayes Transporting employee who had individual and dependant coverage under the plan, incurred approximately $11,000.00 in medical expenses. Gem Insurance denied the Koevens' claims as falling outside of the coverage period because of the termination for non-payment of premium. Thereafter, the Koevens threatened litigation against Gem Insurance relying in part on § 31A–23–311 of the Utah Insurance Code which states:

> Subject to Subsections (2) and (5), as between the insurer and the insured, the insurer is considered to have received the premium and is liable to the insured for losses covered by the insurance and for any unearned premiums upon cancellation of the insurance if the insurer … (a) has assumed a risk; and (b) the premium for that insurance has been received by … (iii) an employer who deducts part or all of the premium from an employee's wages or salary. . . .

Utah Code Ann. § 31A–23–311(1) (1994 & Supp.1996). Gem Insurance settled its dispute with the Koevens by paying them or their medical care providers $6,093.79.

On April 19, 1996, Gem Insurance filed this lawsuit against Hayes Transporting to recover the full amount of benefits it paid on behalf of the Koevens. Gem Insurance asserted several ERISA and common-law causes of action, and it later amended its complaint to add a cause of action for breach

of contract. Hayes Transporting filed an answer on May 28, 1996, along with an offer of judgment for the entire premium amount for October and November 1995. Hayes Transporting claims that § 31A–23–311(5) of the Utah Insurance Code limits Gem Insurance to the recovery of premiums. Section 31A–23–311(5) provides:

If the insurer is obligated to pay any claims pursuant to the provisions of this section, the agent, broker, or employer who received the premium and failed to forward it shall be obligated to the insurer for the entire unpaid premium due under the policy of insurance together with reasonable expenses of suit and reasonable attorney's fees.

Utah Code Ann. § 31A–23–311(5).

On September 16, 1996, Gem Insurance filed a motion for partial summary judgment seeking a ruling from the court that Utah Code Ann. § 31A–23–311 is preempted by ERISA. Gem Insurance believes that § 31A–23–311 is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, and that under ERISA and its contract with Hayes Transporting it is entitled to any and all damages it has or may incur. In response, Hayes Transporting filed a cross-motion for summary judgment on October 25, 1996, seeking a ruling that (1) Gem Insurance's claims are barred under the doctrine of waiver and (2) § 31A–23–311 is not preempted by ERISA.

During oral argument, the court ruled that genuine issues of material fact exist which preclude the court from granting Hayes Transporting's motion for summary judgment on the issue of waiver.[1] However, the court took the issue of preemption under advisement. Thus, the sole issue now before the court is whether ERISA preempts § 31A–23–311 of the Utah Insurance Code.

---

1. Because the court has already ruled on the issue of waiver, the facts presented in the parties' briefs which relate exclusively to that issue are not relevant to this memorandum decision and order and are not reiterated herein.

2. The summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere plead-

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538, § 87 (1986); *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1552 (10th Cir.1997).

Once the moving party has carried its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(e)); *see also Gonzales v. Millers Cas. Ins. Co.*, 923 F.2d 1417, 1419 (10th Cir.1991).[2] The non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

In considering whether there exist genuine issues of material fact, the court does not weigh the evidence but instead inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Moya v. United States*, 35 F.3d 501, 502–04 (10th Cir.1994).[3] Finally, all material facts

---

ings themselves." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

3. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512.

asserted by the moving party shall be deemed admitted unless specifically controverted by the opposing party. D.Utah R. 202(b)(4).

### III. *DISCUSSION*

When Congress enacted ERISA it attempted to ensure that employee benefit plans would be subject to a uniform body of benefits law. Congress intended "to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government ... [and to prevent] the potential for conflict in substantive law ..., requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656–57, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995) (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 142, 111 S.Ct. 478, 484, 112 L.Ed.2d 474 (1990) (alteration in original)). Accordingly, Congress included within ERISA a provision stating that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added).

■ It is undisputed that the Hayes Transporting employee benefit plan is an ERISA–covered benefit plan, and it is similarly undisputed that Utah Code Ann. § 31A–23–311 "relates to" that plan. However, Hayes Transporting contends that although § 31A–23–311 falls within the scope of ERISA's broad preemption clause, it is nonetheless excepted from preemption under ERISA's "savings clause." *See* 29 U.S.C. § 1144(b)(2)(A). The ERISA savings clause excepts from federal preemption "any law of any State which regulates insurance." *Id.*

To determine whether a state law "regulates insurance" within the meaning of the ERISA savings clause, the court must apply the two-part analysis articulated by the United Supreme Court in *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) and

*Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). First, the court must determine whether the state law fits the common-sense definition of insurance regulation. *Pilot*, 481 U.S. at 48, 107 S.Ct. at 1553; *Metropolitan Life*, 471 U.S. at 740–42, 105 S.Ct. at 2389–91. Second, the court must decide whether the state law regulates the "business of insurance" as that phrase has been interpreted based on its use in the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015.[4] *Pilot*, 481 U.S. at 48, 107 S.Ct. at 1553; *Metropolitan Life*, 471 U.S. at 742–44, 105 S.Ct. at 2390–91. A state law regulates the "business of insurance" within the meaning of the McCarran–Ferguson Act if (1) it has the effect of transferring or spreading a policyholder's risk, (2) it involves an integral part of the policy relationship between the insurer and the insured, and (3) it is limited to entities within the insurance industry. *Pilot Life*, 481 U.S. at 48–49, 107 S.Ct. at 1553–54; *Metropolitan Life*, 471 U.S. at 743, 105 S.Ct. at 2391. If the court finds that the state law in question fails either the common-sense test or any one of the three McCarran–Ferguson Act criteria, it must find that the law fails to fall within the ERISA savings clause and is therefore preempted. *See, e.g., Pilot*, 481 U.S. at 50–51, 107 S.Ct. at 1554–55 (finding state law did not "regulate insurance" after concluding that law satisfied only one of the three McCarran–Ferguson Act criteria); *Kelley v. Sears, Roebuck & Co.*, 882 F.2d 453, 456 (10th Cir.1989) (same); *Texas Pharmacy Ass'n v. Prudential Ins. Co.*, 105 F.3d 1035, 1038 (5th Cir. 1997) ("[I]f a statute fails either to fit the common-sense definition of insurance regulation or to satisfy any one element of the three-factor *Metropolitan Life* test, then the statute is not exempt from preemption by the ERISA insurance savings clause.")

Gem Insurance argues that § 31A–23–311 fails the common-sense test and fails to meet any of the three factors in the McCarran–Ferguson Act "business of insurance" test. Conversely, Hayes Transporting argues that the common-sense test and all three factors

---

4. The McCarran–Ferguson Act gives states the    authority to regulate the business of insurance.

of the "business of insurance" test have been satisfied.

## A. *The Common–Sense Test*

A common-sense understanding of the phrase "regulates insurance" supports the conclusion that § 31A–23–311 of the Utah Insurance Code is exempted from federal preemption by the ERISA savings clause. In *Pilot Life*, the Supreme Court stated that "[a] common-sense view of the word 'regulates' would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." 481 U.S. at 50, 107 S.Ct. at 1554. Section 31A–23–311 is specifically directed toward the insurance industry. Indeed, its purpose is to define an insurer's duties to its insured following the cancellation of insurance for the non-payment of premium.

Moreover, the court is unpersuaded by Gem Insurance's argument that § 31A–23–311 is not specifically directed toward the insurance industry because it is also directed toward employers and group policyholders. While § 31A–23–311 mentions employers and group policyholders, the only duty it imposes upon them is an obligation to pay an insurer the premium due under the insurance policy if an insurer is *first* obligated to pay claims under the statute. *See* Utah Code Ann. § 31A–23–311(5). Thus, any regulation of employers is secondary to the statute's primary goal of imposing liability upon insurers for the employer's non-payment of premium. Certainly, the inclusion of a secondary obligation upon an employer to partially "reimburse" an insurer does not alter the conclusion that § 31A–23–311 is specifi-

cally directed toward the insurance industry.[5]

## B. *The McCarran–Ferguson "Business of Insurance" Test*

Because the common-sense understanding of the phrase "regulates insurance" supports the conclusion that § 31A–23–311 of the Utah Insurance Code is exempted from preemption by the ERISA savings clause, the court must now determine whether the statute "regulates insurance" under the McCarran–Ferguson Act. As stated above, there are three factors which the court must consider: (1) whether the statute has the effect of transferring or spreading the policyholder's risk; (2) whether the statute is an integral part of the policy relationship between the insurer and the insured; and (3) whether the statute is limited to entities within the insurance industry. *See Pilot*, 481 U.S. at 48–49, 107 S.Ct. at 1553–54; *Kelley*, 882 F.2d at 456. The statute must satisfy all three factors to be saved from preemption.

■ The court begins its analysis with the second factor and concludes that § 31A–23–311 is not an integral part of the insurer-insured policy relationship and therefore does not regulate the "business of insurance" under the McCarran–Ferguson test. In *Kelley v. Sears, Roebuck & Co.*, the Tenth Circuit concluded that Colorado's common law of bad faith was not an integral part of the policy relationship between the insurer and the insured because it "does not control the substantive terms of the insurance contract." 882 F.2d 453, 456 (10th Cir.1989). Furthermore, in *Blue Cross & Blue Shield of Kansas City v. Bell*, the Tenth Circuit found that a Kansas mandated-provider statute was an

---

5. Gem Insurance cites to *Howard v. Gleason Corp.*, 901 F.2d 1154 (2d Cir.1990), in support of its argument that § 31A–23–311 does not regulate insurance because it is not directed toward the insurance industry to the extent that it mentions employers and group policyholders. Even if this court was to agree with the conclusion reached in *Howard, Howard* is distinguishable from this case. In *Howard*, the Second Circuit concluded that a New York notice provision did not "regulate insurance" under the common-sense test because the New York notice require-

ment could be fulfilled either by the employer or by the insurer. 901 F.2d at 1158. Thus, the *Howard* court concluded that because the statute regulated the notice that an employer must give to its employees, it was not directed toward the insurance industry. *Id.* However, in this case, § 31A–23–311 does not impose the same duties or liabilities upon employers as it imposes upon insurers. Instead, as explained above, the only duty imposed upon employers is a secondary duty to the insurers.

integral part of the policy relationship because the statute regulated a choice which "resides within the contractual relationship between the insurer and the insured." 798 F.2d 1331, 1335 (10th Cir.1986).[6]

In light of the above authority, the court must conclude that § 31A–23–311 is not an integral part of the insurer-insured relationship because the statute does not regulate or control the substantive terms of the insurance contract. Instead, § 31A–23–311 only operates to apportion liability in the event premiums are not forwarded to the insurer. Indeed, the statute specifically states that it does not "operate to extend any insurance contract policy or coverage beyond its date of termination nor alter or amend provisions thereof." Utah Code Ann. § 31A–23–311(3)(b). Furthermore, § 31A–23–311 does not reside within the contractual relationship between the insurer and the insured; in fact, the statute is activated only once the insurance policy has been canceled. *See* Utah Code Ann. § 31A–23–311(1) ("[T]he insurer . . . is liable to the insured for losses covered by the insurance and for any unearned premiums *upon cancellation of the insurance . . . .*" (emphasis added)).[7] Therefore, because § 31A–23–311 does not satisfy at least one of the three factors in the McCarran–Ferguson "business of insurance" test, it is not saved from ERISA preemption.[8]

## IV. ORDER

Accordingly, and based on the foregoing reasons, IT IS HEREBY ORDERED AS FOLLOWS:

1. Plaintiff Gem Insurance's motion for partial summary judgment is granted.

**6.** *See also Pilot Life*, 481 U.S. at 51, 107 S.Ct. at 1554–55 (finding common law of bad faith is not integral to the insurer-insured policy relationship because the law "does not define the terms of the relationship between the insurer and the insured"); *Smith v. Jefferson Pilot Life Ins. Co.*, 14 F.3d 562, 570 (11th Cir.), *cert. denied*, 513 U.S. 808, 115 S.Ct. 57, 130 L.Ed.2d 15 (1994) (finding state notice statute did not affect an integral part of the relationship between the insurer and the insured because it regulated the administration of policies, not their substantive terms); *PAS v. Travelers Ins. Co.*, 7 F.3d 349, 355 (3d Cir.1993) (concluding that law that prohibits the inclusion of discriminatory terms in an insurance policy is integral to the relationship between insurer and insured); *Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir.1990) (holding state notice requirement was not integral to the insurer-insured relationship because although it may lead to an extension of the relationship it did "not dictate any of the terms of the insurance contract itself"); *Buehler Ltd. v. Home Life Ins. Co.*, 722 F.Supp. 1554, 1561 (N.D.Ill.1989) (finding that because state insurance-claims statute did not regulate content, it was not integral to the policy relationship between the insurer and the insured); *Denette v. Life of Ind. Ins. Co.*, 693 F.Supp. 959, 967 (D.Colo.1988) (finding pre-existing condition statute regulated an integral part of the insurer-insured relationship because it "impos[ed] guidelines on the substantive terms of insurance contracts").

**7.** The District Court for the Northern District of Alabama reached the same conclusion in a factually similar case. In *Presley v. Blue Cross–Blue Shield of Alabama*, 744 F.Supp. 1051, 1059 (N.D.Ala.1990), the court considered state common law which required an insurer of a group employment-health plan to notify the insured of the cancellation of a policy due to the employer's failure to timely pay premiums. If an insurer failed to give proper notice, the insured was entitled to the rights available to it under the policy had notice been received. *Id.* In concluding that the state law was not an "integral" part of the insurer-insured relationship, the court stated that compliance with the law "may create a direct relationship between the insurer and the insured. But, there being no such direct relationship prior to the employer's default, the rule cannot represent an integral part of a non-existent relationship." *Id.* at 1061.

Similarly, while § 31A–23–311 may create a direct relationship between the insurer and the insured by imposing liability upon the insurer in the event of a default by the employer, that relationship arises only after the insurance policy has been canceled.

**8.** Having concluded that the statute fails to satisfy one of the three McCarran–Ferguson factors, the court need not decide whether the statute satisfies the two remaining factors. *See, e.g., Texas Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entertainment Co.*, 105 F.3d 210, 218 (5th Cir.1997); *CIGNA Healthplan of La., Inc. v. Louisiana*, 82 F.3d 642, 650 n. 55 (5th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 387, 136 L.Ed.2d 304 (1996). Furthermore, because the court found that § 31A–23–311 is not saved from preemption by the ERISA savings clause, the court does not need to decide whether § 31A–23–311 conflicts with ERISA. *See Pilot Life*, 481 U.S. at 51–57, 107 S.Ct. at 1555–58; *United of Omaha v. Business Men's Assurance Co. of Am.*, 104 F.3d 1034, 1041–42 (8th Cir.1997).

2. Defendant Hayes Transporting's motion for summary judgment is denied.