Janice L. EAST, Plaintiff,

v.

B.L. LONG, et al., Defendants.

Civ. A. No. 92–AR–0449–M.

United States District Court,
N.D. Alabama, M.D.

March 4, 1992.

---

Myron K. Allenstein, Gadsden, Ala., for plaintiff Janice L. East.

F. Michael Haney, Inzer Stivender Haney & Johnson, Gadsden, Ala., for defendant B.L. Long dba B.L. Long Ins.

Thomas M. Eden, III, Bert S. Nettles, Spain Gillon Grooms Blan & Nettles, Birmingham, Ala., for defendant Congress Life Ins. Co.

## MEMORANDUM OPINION

ACKER, District Judge.

The above-entitled case originated with a complaint filed by Janice L. East in the Circuit Court of Etowah County, Alabama, CV 91–1086–WWC. East there charged that defendant, B.L. Long, individually, and as agent for Congress Life Insurance Company, the other defendant, committed fraud upon East in the sale of a policy of medical insurance. East sought both compensatory and punitive damages and demanded a trial by jury. Her complaint made no mention of the Employee Retirement Income Security Act of 1974 (ERISA) and alleged no facts which facially implicate ERISA.

On February 21, 1992, within thirty (30) days after January 24, 1992, the date upon which Congress Life alleges that it was served with the state court summons, Congress Life filed a notice of removal to this court claiming that this court had original jurisdiction under 28 U.S.C. § 1331, because East's medical coverage was issued as part of an employee group insurance plan, and that a federal question under ERISA was thus presented. The other defendant, B.L. Long, separately joined in the removal, but neither the joinder which B.L. Long filed nor Congress Life's notice of removal reflects the date upon which Long was served with the state court summons.

For aught appearing in the removal papers, Long was served more than thirty (30) days before the notice of removal was filed in this court.

Contemporaneously with filing its notice of removal, Congress Life filed in this court a motion to dismiss East's action and alternative motions to strike East's claim for punitive damages and to strike her jury demand. East responded with a motion to remand the case to the Circuit Court of Etowah County.

Whether or not East simply intends to be consistent with her questioning of this court's removal jurisdiction, as indicated by her motion to remand, or wants to be gracious, she has not taken an entry of default against Long, who, unless he filed in the state court an answer that is not reflected in the removal papers, has failed to file a timely answer as required by Rule 81(c), F.R.Civ.P. Knowing that this court is bound to recognize the "super-preemption" of ERISA enunciated by the Eleventh Circuit in *Brown v. Connecticut Life Ins. Co.*, 934 F.2d 1193 (11th Cir.1991), East probably anticipates that this court will deny her motion to remand. Based on this perhaps erroneous assumption, East has filed an alternative motion for leave to amend her complaint for the purpose of invoking ERISA to seek all relief to which ERISA may entitle her under the facts she alleges.

This court believes that the Supreme Court has spoken clearly in its recent cases pointing toward its ultimate granting of jury trials in ERISA cases. This court predicts that when and if the Supreme Court addresses the issue, jury trials in ERISA cases will become routine when monetary relief is sought. Nevertheless, for the present, this court is bound to follow the current holding of the Eleventh Circuit that plaintiffs in ERISA cases in federal court are not entitled to trial by jury. *Blake v. Unionmutual Stock Life Ins. Co.*, 906 F.2d 1525 (11th Cir.1990). This court's arguments in favor of jury trial in ERISA cases under the Seventh Amendment appear in *Blue Cross and Blue Shield of Alabama v. Lewis*, 753

F.Supp. 345 (N.D.Ala.1990); *Jordan v. Reliable Life Ins. Co.*, 716 F.Supp. 582 (N.D.Ala.1989); *Jordan v. Reliable Life Ins. Co.*, 694 F.Supp. 822 (N.D.Ala.1988); and *Whitt v. Goodyear Tire & Rubber Co.*, 676 F.Supp. 1119 (N.D.Ala.1987). Similar expressions from some who agree with this court on the Seventh Amendment's guaranty of the right to jury trial in ERISA cases can be found in *International Union v. Midland Steel Prod.*, 771 F.Supp. 860 (N.D.Ohio 1991); *McDonald v. Artcraft Elec. Supply Co.*, 774 F.Supp. 29 (D.D.C. 1991); *McLean v. Carlson Companies, Inc.*, 777 F.Supp. 1480 (D.Minn.1991); *Steeples v. Time Ins. Co.*, 139 F.R.D. 688 (N.D.Okl.1991); *Vicinanzo v. Brunschwig & Fils*, 739 F.Supp. 882 (S.D.N.Y.1990); *Haywood v. Russell Corp.*, 584 So.2d 1291 (Ala.1991); and *The Right to Jury Trial in ERISA Civil Enforcement Actions*, 15 Am.J.Trial Advoc. 157 (1991).

This court does not know what to make of enigmatic footnote 7 in *McRae v. Seafarers' Welfare Plan*, 920 F.2d 819, 821 n. 7 (11th Cir.1991), which arguably rejects this court's reading of *Ingersoll–Rand Co. v. McClendon*, —— U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), as explained in *Lewis, supra,* a reading which several other courts have joined. The Eleventh Circuit has not yet explained what it believes Justice O'Connor and her fellow justices meant in *Ingersoll–Rand* when, after finding the state law claims preempted by ERISA, they said:

> It is clear that the relief requested here [compensatory and punitive damages for tortiously terminating a plan participant's employment] is well within the power of federal courts to provide.

111 S.Ct. at 486. This court has attempted to find out what has happened in *Ingersoll–Rand* in the Texas courts after its remand by the Supreme Court but thus far has been unable to ascertain whether or not the Texas courts will find that the defendant will be exposed to the possibility of extracontractual damages as an ERISA remedy. This court cannot bring itself to believe that the Eleventh Circuit, repudiating *Ingersoll–Rand*, intends to hold that because ERISA preempts state law claims, a federal court cannot provide a remedy similar in character to the preempted state law claim. As stated above, it is abundantly clear from the materials filed by Congress Life with its notice of removal that the instant case is governed by ERISA and therefore that any remedy East may have is not a remedy provided by state law but rather is an ERISA remedy. This court acknowledges that a few courts have simplistically concluded that, if the remedy cannot be found within the express language of ERISA, the remedy does not exist. Most courts, including the Eleventh Circuit, have not gone this far. They can hardly take such an extreme position after *Ingersoll–Rand*. What the Supreme Court said in *Ingersoll–Rand* is made more understandable and binding, if that is possible, by the graphic language employed in *Franklin v. Gwinnett County Public Schools*, —— U.S. ——, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), which reinforced the idea, if it needs any reinforcement, that absent clear Congressional direction to the contrary, the federal courts have the power to forge appropriate relief in causes of action brought pursuant to federal statutes where the statutes themselves are silent as to the parameters of relief to be afforded. This latest Supreme Court pronouncement is set out in the margin.[1] Perhaps the

---

**1.** "[W]here legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Bell v. Hood*, 327 U.S. 678, 684, [66 S.Ct. 773, 777, 90 L.Ed. 939] (1946). The Court explained this longstanding rule as jurisdictional, and upheld the exercise of the federal court's power to award appropriate relief so long as a cause of action existed under the Constitution or laws of the United States. *Ibid.*

The *Bell* Court's reliance on this rule was hardly revolutionary. From the earliest years of the Republic, the Court has recognized the power of the judiciary to award appropriate remedies to redress injuries actionable in federal court, although it did not always distinguish clearly between a right to bring suit and a remedy available under such a right. In *Marbury v. Madison* [5 U.S.], (1 Cranch) 137, 163 [2 L.Ed. 60] (1803), for example, Chief Justice Marshall observed that our government "has been emphatically termed a government of laws, and

*"dicta"* in *Gwinnett County* will come as a "surprise" to the Sixth Circuit.

The most recent example of judicial agony over *Ingersoll–Rand* comes from a panel of the Seventh Circuit in *Harsch v. Eisenberg*, 956 F.2d 651 (7th Cir.1992). In *Harsch* the Seventh Circuit was not as generous to Justice O'Connor and her brothers as this court was in *Lewis*. The Seventh Circuit described as *"dicta"* and as *"surprising"* Justice O'Connor's pointed statement that state law extracontractual relief which in *Ingersoll–Rand* was admittedly preempted by ERISA "is well within the power of federal courts to provide" and that "there is no basis in § 502(a)'s language for limiting ERISA actions to only those which seek 'pension benefits'". This court finds it more "surprising" that the Seventh Circuit went so far as to say in the teeth of Justice O'Connor's opinion that "[t]he Supreme Court has never addressed the availability of extracontractual damages under section 502(a)(3)". It is as if two ships passed in the night. This court disagrees totally

with the Seventh Circuit's characterization of Justice O'Connor's holding as *"dicta"*. Rather, her statement of principle was an important, if not the central, point of her rationale.

 Although ERISA has carved out an area of exclusive federal concern, ERISA did not purport to destroy the concurrent jurisdiction of the state courts to try ERISA cases. In other words, unless removed from the state court in strict compliance with the statutes for effecting a removal, an ERISA case, if first filed in the state court, happily remains in the state court. Therefore, before having to decide whether East is entitled to claim punitive and/or extracontractual compensatory damages for any misrepresentations which may have been made by Long, in addition to recovering any benefits owed her by contract or as a proximate consequence of any breach of an ERISA-recognized fiduciary obligation, the court must rule on East's motion to remand. Even if there were no motion to remand, this court is obligated *sua sponte* to examine its own

not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right." This principle originated in the English common law, and Blackstone described "it is a general and indisputable rule, that where there is a legal right, there is also a legal remedy, by suit or action at law, whenever that right is invaded." 3 W. Blackstone, Commentaries 23 (1783). See also *Ashby v. White*, 1 Salk. 19, 21, 87 Eng.Rep. 808, 816 (Q.B. 1702) ("If a statute gives a right, the common law will give a remedy to maintain that right ...").

\* \* \* \* \* \*

Respondents and the United States as *amicus curiae*, however, maintain that whatever the traditional presumption may have been when the Court decided *Bell v. Hood*, it has disappeared in succeeding decades. We do not agree. In *J.I. Case Co. v. Borak*, 377 U.S. 426 [84 S.Ct. 1555, 12 L.Ed.2d 423] (1964), the Court adhered to the general rule that all appropriate relief is available in an action brought to vindicate a federal right when Congress has given no indication of its purpose with respect to remedies. Relying on *Bell v. Hood*, the *Borak* Court specifically rejected an argument that a court's remedial power to redress violations of the Securities Exchange Act of 1934 was limited to a declaratory judgment. 377 U.S., at 433–434 [84 S.Ct. at 1560]. The Court concluded that the federal courts "have the power to grant all necessary remedial relief" for violations of the Act. *Id.*, at 435 [84 S.Ct. at 1561]. As Justice Clark's opin-

ion for the Court observed, this holding closely followed the reasoning of a similar case brought under the Securities Act of 1933, in which the Court had stated:

"'The power *to enforce* implies the power to make effective the right of recovery afforded by the Act. And the power to make the right of recovery effective implies the power to utilize any of the procedures or actions normally available to the litigant according to the exigencies of the particular case.'" *Id.*, at 433–434 [84 S.Ct. at 1560] (quoting *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 288 [61 S.Ct. 229, 233, 85 L.Ed. 189] (1940)).

That a statute does not authorize the remedy at issue "in so many words is no more significant than the fact that it does not in terms authorize execution to issue on a judgment." *Id.*, at 288 [61 S.Ct. at 233]. Subsequent cases have been true to this position.

\* \* \* \* \* \*

In the years before and after Congress enacted this statute, the Court "follow[ed] a common-law tradition [and] regarded the denial of a remedy as the exception rather than the rule." *Id.* [*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353], at 375 [102 S.Ct. 1825, 1837, 72 L.Ed.2d 182 (1982) ] (footnote omitted). As we outlined in Part II, this has been the prevailing presumption in our federal courts since at least the early nineteenth century.

jurisdiction to see if the removing defendants complied with the removal statutes. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Fitzgerald v. Seaboard System R.R.*, 760 F.2d 1249 (11th Cir.1985); *Sadat v. Mertes*, 615 F.2d 1176 (7th Cir.1980); *Robinson v. Quality Ins. Co.*, 633 F.Supp. 572 (S.D.Ala. 1986).

■ The threshold inquiry, therefore, narrows to the court's need to know the date upon which Long was served the summons in the state court. It is only the acquisition of this knowledge, thus far conspicuously undisclosed, which can demonstrate whether this removal occurred within thirty (30) days after the case could first have been removed. East's motion to remand was admittedly filed within thirty (30) days after the filing of the notice of removal and therefore is timely pursuant to 28 U.S.C. § 1447(c). Even if a motion to remand had not been filed, the waivability of a defect as to timeliness of the removal is questionable. The only real jurisdictional factual issue is whether *all* defendants joined in the removal within thirty (30) days after it became removable by service on the *first served* defendant as required by 28 U.S.C. §§ 1441(e), 1446(a), and 1446(b). This general rule, here applicable, is stated in 1A Moore's Federal Practice ¶ 0.168[3.-5-5] at 585–87, as follows:

> As an unserved nonresident defendant [Congress Life] need not join in the removal petition, we believe that where the action as pleaded would be removable by all of the joined defendants, the thirty-day period starts to run from the time of service on the first defendant who would have to be joined in the removal petition. This view is practicable so far as the served defendant is concerned. It is not harsh as to subsequently served defendants. If the first served defendant abstains from seeking removal or does not effect a timely removal, subsequently served defendants cannot remove, it is true, but that is due to the rule of unanimity among defendants which is required for removal.

(footnotes omitted). *See also Chicago, Rock Island & Pac. R.R. Co. v. Martin*, 178 U.S. 245, 20 S.Ct. 854, 44 L.Ed. 1055 (1900).

Unless Congress Life or Long files an affidavit on or before March 11, 1992, demonstrating conclusively that Long was served with the summons and East's complaint in CV 91–1086–WWC in the Circuit Court of Etowah County *on or after January 22, 1992*, East's motion to remand will be granted. Meanwhile, in the event the actual jurisdictional facts demonstrate that the removal was, in fact, timely, East is, of course, free to request an entry of default by the Clerk against Long.

The other pending motions will be deferred pending the ruling on the motion to remand. In the event the case is remanded, these motions will follow the case to the state court.