663 So.2d 905 (1995)
Willard WEEMS and Julia Weems
v.
JEFFERSON-PILOT LIFE INSURANCE COMPANY, INC., et al.
No. 1920981.
Supreme Court of Alabama.
May 5, 1995.
Rehearing Denied June 16, 1995.
*906 R. Willson Jenkins of Jester & Jenkins, Florence, for appellants.
A. Stewart O'Bannon III of O'Bannon and O'Bannon, Florence, for appellees.
COOK, Justice.
Willard and Julia Weems appeal from a summary judgment entered against them in their action against Jefferson-Pilot Life Insurance Company, Inc. ("Jefferson-Pilot"), in which they seek compensatory and punitive damages, based on Jefferson-Pilot's failure to pay a claim for insurance benefits. We affirm in part; reverse in part; and remand.
The following facts are essentially undisputed. In 1988, A.C. Johnson Trucking Company ("Johnson"), employed Willard Weems as its "marketing manager." In the same year, Johnson began providing major medical, life, and disability insurance for its employees, through a policy underwritten by Jefferson-Pilot. This arrangement also allowed Johnson's employees to purchase coverage for their dependents through monthly payroll deductions.[1]
Johnson failed to pay Jefferson-Pilot the premiums due for the months of December 1988 and January and February 1989. This delinquency resulted in an automatic termination of coverage, subject to a 60-day grace period. Johnson eventually paid the arrearage, and coverage of its employees was reestablished. However, by October 1, 1989, Johnson's premium payments were again three months overdue, and Jefferson-Pilot notified Johnson that the policy had been canceled, effective July 31, 1989. Once again, Johnson paid the arrearage, and coverage, which was thus reestablished, continued uninterrupted until March 1990. On April 23, 1990, Jefferson-Pilot notified Johnson that it had not received the March premium, and, further, stated that Johnson would receive "a notice of confirmation of termination," absent receipt of the amount of delinquent premiums within 15 days.
Johnson did not pay the premiums; nevertheless, on May 5, 1990, Jefferson-Pilot's "Underwriting Department" authorized a six-month plan renewal. Before July 27, 1990, Jefferson-Pilot contacted Johnson at least once more regarding the delinquent premiums. On that date, however, having received no payment, Jefferson-Pilot sent Johnson a letter stating that its insurance plan had been canceled, effective April 30, 1990. On August 1, 1990, Johnson, for the first time, notified its employees of the lapse of coverage.
Meanwhile, on June 5, 1990, Weems suffered a heart attack and required emergency hospitalization. Jefferson-Pilot, through its "insurance plan's notification procedures," was apprised of Weems's condition, and, on three different occasions, it "certified," or approved, his hospitalization, through June 28, 1990. Weems initially incurred $18,000 in medical expenses. Before July 27, 1990, Jefferson-Pilot paid in excess of $6,000 of Weems's expenses. After that date, however, Jefferson-Pilot ceased paying claims, and, in addition, successfully sought reimbursement from Weems's medical providers.
*907 On January 4, 1991, the Weemses sued Johnson, alleging (1) breach of contract and fiduciary duty, (2) fraud, and (3) conversion of payroll deductions. The Weemses eventually amended their initial complaint to include numerous claims against Jefferson-Pilot, alleging violations of state and federal law. More specifically, their state-law claims alleged that Jefferson-Pilot had breached duties owed to the Weemses (1) to inform them of Johnson's failure to pay insurance premiums; (2) to continue coverage through July 27, 1990; and (3) to pay the medical expenses to which the Weemses were contractually entitled. Their state-law claims against Jefferson-Pilot also included allegations of (4) fraud and (5) bad faith refusal to pay Weems's medical expenses.
The Weemses' federal-law claims against Jefferson-Pilot alleged violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. §§ 1001-1461 ("ERISA"). More specifically, the Weemses alleged that Jefferson-Pilot had, by failing to notify them that premium payments were delinquent, and by retroactively terminating coverage, (1) fraudulently, negligently, wantonly, or intentionally "interfered with [their] rights to receive ERISA benefits," and, (2) fraudulently, negligently, wantonly, or intentionally breached fiduciary duties, as those duties are expressed in §§ 1104-05. The Weemses alleged, among other things, that "[a]s a proximate result of [Jefferson-Pilot's] conduct," Willard Weems had suffered a loss of wages, accompanied by pain and emotional distress; had incurred liability for past medical treatment; and had incurred a medical condition, for which, he contends, he will be unable to obtain alternative coverage.
The Weemses sought compensatory and punitive damages for the alleged violations of their state-law rights. For alleged violations of rights arising under ERISA, they sought the following specific remedies:
"1. Recovery of monetary damages for medical expenses incurred by ... Willard Weems, pursuant to 29 U.S.C. Sec. 1109; 29 U.S.C. Sec. 1132(a)(3) and 29 U.S.C. 1132(a)(1)(b); and 29 U.S.C. 1105(a)(1) and (a)(3); 29 U.S.C. 1104(a) and (b).
"2. Compensatory and punitive damages for lost wages through payroll deductions from March of 1990 through August 1 of 1990 for wages that could have been used to pay for dependent coverage.
"3. Compensatory damages for the emotional anxiety and frustration in being misled into believing that [his] medical expenses were to be paid and for becoming personally obligated to pay for such medical expenses.
"4. Interest on wages and medical expenses.
"5. Attorney's fee costs as permitted by 29 U.S.C. 1132(g)(2)(D).
"6. Punitive and compensatory damages for the Defendants' intentional, wanton, reckless, and negligent interference with [his] right to receive plan benefits, for fraudulently misrepresenting to the [Weemses] that there was an ERISA plan in force and effect, for failing to inform the Plaintiffs of the suspension/termination of plan coverage in a timely manner; for failing to timely notify [them] of nonpayment of premiums, for interfering with [their] right to seek alternative health insurance, and for unlawfully converting wages deducted to pay for dependent coverage.
"7. Future medical expenses to insure that [Weems] will have adequate financial resources to care for any future heart condition and continue treatment.
"8. Such other legal and equitable relief to which [Weems] may be entitled."
Jefferson-Pilot moved for a partial summary judgment, contending that ERISA preempts the claims "sound[ing] in tort"; that ERISA does not authorize recovery of "extracontractual" and punitive damages; and that ERISA does not authorize jury trials in actions brought pursuant to its provisions. The trial court granted Jefferson-Pilot's motion, holding that the "state law claims for breach of contract[,] ... bad faith, fraud, negligence, wantonness and willfulness" are preempted by ERISA. It further held that ERISA does not authorize recovery of "extracontractual or punitive damages," or allow the resolution of claims by a jury. The trial judge made the partial summary judgment *908 final, pursuant to Ala.R.Civ.P. 54(b), and the Weemses appealed. We confine our discussion to the precise grounds cited above as bases for the summary judgment.

I. ERISA Preemption
ERISA § 514(a), codified at 29 U.S.C. § 1144(a), sets forth in the following terms the scope of the statutory scheme's preemptive effect:
"Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."
(Emphasis added.) "`A law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2899-2900, 77 L.Ed.2d 490 (1983)). "Under this `broad common-sense meaning,' a state law may `relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." Id., 498 U.S. at 139, 111 S.Ct. at 483 (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987)). Moreover, the scope of preemption "includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." ERISA, § 1144(c).
The Weemses concede, as they must, that their state law claims "relate to" an ERISA plan. However, they contend that those claims are excepted from preemption by the application of § 1144(b)(2)(A), which states: "Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." Their claims are "saved," they argue, by the provisions of § 1144(b)(2)(A), because, they insist, the rule this Court announced in Newton v. United Chambers Insured Plans, 485 So.2d 1147 (Ala.1986), constitutes an Alabama law "regulat[ing] insurance." They contend, in other words, that their state-law claims against Jefferson-Pilot are viable, based on the duty arising under Newton.
Newton involved a question certified to this Court from the United States District Court for the Southern District of Alabama. That court inquired whether Alabama law required "a group insurer [to] notify a participant of termination of the policy for [the employer's] non-payment of the premium where the covered employee does not contribute to the premium." Id. at 1149. Under circumstances similar in all relevant respects to those involved in this case, this Court held that "a group insurer is required to notify a participant of cancellation or modification of the policy if the interests of the participant are adversely affected thereby." Id. at 1150.
Subsequently, at least two federal courts squarely addressed arguments identical to the one made here by the Weemses, namely, that the Newton rule is "saved" by § 1144(b)(2)(A). Both courts rejected those arguments. In Presley v. Blue Cross-Blue Shield of Alabama, 744 F.Supp. 1051 (N.D.Ala.1990), the court explained:
"The courts have developed a two-step test to determine whether a state law falls within the saving provision of 29 U.S.C. § 1144(b)(2)(A). Pilot Life Ins. Co. v. Dedeaux, 481 U.S. at 48, 107 S.Ct. at 1553, 95 L.Ed.2d at 48-49; Anschultz v. Connecticut General Life Insurance Co., 850 F.2d 1467, 1468 (11th Cir.1988). First, the law must `regulate' insurance, the commonsense view of that phrase being that the law must not just have an impact on the insurance industry, but must be specifically directed toward that industry. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. at 48, 107 S.Ct. at 1553, 95 L.Ed.2d at 48; Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 740, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985). Second, the law must regulate the `business of insurance,' as that phrase has been interpreted in case law under the McCarran-Ferguson Act, 59 Stat. 33, 15 U.S.C. § 1011, et seq. Three *909 factors have been used to determine whether a practice falls under the `business of insurance' for purposes of the McCarran-Ferguson Act: (1) whether the practice has the effect of spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. at 48-49, 107 S.Ct. at 1553, 95 L.Ed.2d at 48; Anschultz v. Connecticut General Life Insurance Co., 850 F.2d at 1468. Moreover, the court is guided by an understanding that the civil enforcement remedies of ERISA were intended by the Congress to be exclusive. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. at 54, 107 S.Ct. at 1556, 95 L.Ed.2d at 52."
Applying these factors, the court concluded that the Newton rule did not "regulate insurance," as that concept is expressed in § 1144(b)(2)(A). More specifically, the court concluded that the Newton rule did not constitute "an integral part of the policy relationship between the insurer and the insured." It reasoned:
"Whether the Newton rule can be said to represent an integral part of the relationship between the insured and the insurer is tenuous at best. In employee health insurance plans of the type considered in Newton and of the type covered by ERISA it is ordinarily the employer, or plan sponsor, who has a direct relationship with the insurance company. Newton does nothing more than to advise the plan participant of the need to act because of the delinquency of his employer. That might entail the establishment of a direct relationship between the insurance company and the plan participant but does not, in the opinion of the court, involve an integral part of the relationship then existing. In other words, compliance with Newton may create a direct relationship between the insurer and the insured. But, there being no such direct relationship prior to the employer's default, the rule cannot represent an integral part of a non-existent relationship."
Presley, 744 F.Supp. at 1061. More recently, the Court of Appeals for the Eleventh Circuit, like the court in Presley, concluded that "the Newton rule does not ... constitute an `integral relationship between the insurer and the insured,'" and, consequently, that § 1144(b)(2)(A) did not exempt from preemption state-law claims based on Newton. Willett v. Blue Cross & Blue Shield of Alabama, 953 F.2d 1335, 1341 n. 6 (11th Cir.1992).
We are unable to conclude that these courts erred in determining that the Newton rule fails to satisfy the criteria for exemption from preemption. Thus, the trial court did not err in holding that the Weemses's "state law claims for breach of contract[,]... bad faith, fraud, negligence, wantonness and willfulness," were preempted by ERISA. To the extent that the trial court so held, its judgment is affirmed.

II. ERISA Claims
The Weemses' federal-law claims alleged that Jefferson-Pilot (1) had breached fiduciary duties, and (2) had "interfered with [their] rights to receive ERISA benefits." The trial judge granted Jefferson-Pilot's partial motion for a summary judgment, agreeing with its contention that ERISA does not authorize recovery of punitive damages, or of "extracontractual" damages, that is, "`[d]amages that would give a beneficiary more than he or she is entitled to receive under the strict terms of the plan.'" Lawrence v. Jackson Mack Sales, Inc., 837 F.Supp. 771, 786 (S.D.Miss.1992), aff'd, 42 F.3d 642 (5th Cir. 1994).
In Haywood v. Russell Corp., 584 So.2d 1291 (Ala.1991), this Court, relying extensively on Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), discussed at length the availability of extracontractual damages under ERISA. Indeed, it interpreted that case as holding that state and federal "courts are authorized to award damages, both extracontractual, and even punitive, where the facts support them, ... though they are not specifically provided for in ERISA." 584 So.2d at 1297 (emphasis added). Because Haywood's conclusions regarding the species of damages recoverable under ERISA are so pertinent to *910 the disposition of that issue in this case, we here incorporate the following extensive excerpt:
"The [Ingersoll-Rand] Court unequivocally stated:
"`Not only is § 502(a) the exclusive remedy for vindicating § 510-protected rights, there is no basis in § 502(a)'s language for limiting ERISA actions to only those which seek `pension benefits.' It is clear that the relief requested here [compensatory and punitive damages for tortiously terminating a participant's employment] is well within the power of federal courts to provide. Consequently, it is no answer to a pre-emption argument that a particular plaintiff is not seeking recovery of pension benefits.'
"498 U.S. at 145, 111 S.Ct. at 486.
"All of the Justices of the Supreme Court joined Justice O'Connor in the following statements:
"`[T]he [Texas] court held that under Texas law a plaintiff could recover in a wrongful discharge action if he established that "the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund." The court noted that federal courts had held similar claims pre-empted by ERISA, but distinguished the present case on the basis that McClendon was "not seeking lost pension benefits but [was] instead seeking future lost wages, mental anguish and punitive damages as a result of the wrongful discharge."
"`Because this issue has divided state and federal courts, we granted certiorari, and now reverse."
"498 U.S. at 136-37, 111 S.Ct. at 481-82 (citations omitted; emphasis omitted; emphasis added [in Haywood]).
"The facts in the case before us are indistinguishable from those in Ingersoll-Rand. In that case the employee alleged that his employer had tortiously terminated his employment just before his plan benefits would have vested and that he had been damaged as a result of that alleged action of the employer. The Supreme Court held that a remedy for that tort existed under § [1140] and that the state court was authorized to award damages beyond the benefits to which the plaintiff was entitled under the plan. In this case the plaintiff alleges facts from which a factfinder could conclude that the employer tortiously interfered with her right to disability benefits under an ERISA plan. She seeks compensatory and punitive damages for that interference. Ingersoll-Rand teaches that this plaintiff's allegations state a cause of action under § [1140] and that a remedy exists under § [1132(a)] that may be enforced in the federal or state courts notwithstanding that the state common law tort claim is preempted by the Act.
"....
"... The late Judge Robert S. Vance, in an opinion issued after his death, anticipated such action by the Supreme Court of the United States. In Kane v. Aetna Life Insurance Co., 893 F.2d 1283 (11th Cir. 1990), cert. denied, 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990), Judge Vance, writing for the United States Court of Appeals for the 11th Circuit, stated that although ERISA preempts all state common law claims relating to employee benefit plans, `Federal courts possess the authority,... to develop a body of federal common law to govern issues in ERISA actions not covered by the act itself.' District Judge William M. Acker, Jr., in Blue Cross & Blue Shield of Alabama v. Lewis, 753 F.Supp. 345 (N.D.Ala.1990), observed that `Ingersoll-Rand brings to full flower' the idea expressed by Judge Vance that federal courts have the authority to develop remedies beyond those expressly provided by ERISA. Judge Acker then stated:
"`In Amos v. Blue Cross-Blue Shield of Alabama, 868 F.2d 430 (11th Cir.1989), the Eleventh Circuit, prior to Ingersoll-Rand, had carried the concept of ERISA `preemption' to its ultimate reach. Amos would eliminate the possibility of recognizing any statutorily unspecified federal remedy under ERISA, especially if it would duplicate any `preempted' *911 state remedy. Amos ended with the following near apology:
"`"We acknowledge that by eliminating the possibility that insurance companies may be liable for punitive or extra-contractual damages, the courts are removing an historical disincentive to insurance company misbehavior. Consequently, our decision may produce unintended results. However, any change in the law's course will have to be charted by the Congress or the Supreme Court."
"`Id. at 433 (emphasis supplied [by Judge Acker]).
"`In Ingersoll-Rand the Supreme Court has now clearly answered the Eleventh Circuit's prayer by giving it the "green light" to fashion ERISA remedies beyond the mere enforcement of claims for unpaid benefits, even though a federally fashioned remedy may bear striking similarity to some "preempted" state or common law remedy. According to Ingersoll-Rand, a court, state or federal, in an ERISA case, may, as an ERISA remedy, award extracontractual, even punitive damages, that is, if the facts call for such a remedy. This was the idea which this court was endeavoring to articulate in Amos v. Blue Cross-Blue Shield of Alabama, 681 F.Supp. 1515 (N.D.Ala.1988). This court did not and could not express the idea as forcefully as Justice O'Connor has now expressed it. Some ERISA-governed employers and administrators claim to be in a state of shock in the wake of Ingersoll-Rand. They say the Supreme Court did not know what it was saying in Ingersoll-Rand, This court [respectfully] disagrees, being willing to attribute literacy to the Supreme Court. This court can read and understand the English language and believes that the Supreme Court would not say something this important without being careful and deliberate in its choice of words. After all, the Supreme Court granted certiorari in Ingersoll-Rand for the very reason that the "preemption" question "has divided state and federal courts." [498 U.S. at 137,] 111 S.Ct. at 481. The Supreme Court would not undertake to clear up the differences of opinion in a way which would create a new basis for misunderstanding. There is no reason in Ingersoll-Rand for any misunderstanding of the Supreme Court's intent.'
"753 F.Supp. at 347.
"We agree entirely with Judge Acker's reading of Ingersoll-Rand. The holding is unanimous and unequivocal. No reasonable person can misunderstand it, although one might disagree with it. In our view, it comes as no surprise. The dissatisfaction with the Court's broad interpretation of the preemption provisions of ERISA, without specifically articulating what remedies existed to replace preempted state remedies, has been often brought to the attention of Congress by those, such as the writer of this opinion, who believed that the Court's construction of the preemption provisions of ERISA, without a recognition of some rights and remedies to take the place of preempted state rights and remedies, went beyond what the Congress intended. As recently as 1988, the Education and Labor Committee of the House of Representatives described the legislative intent behind ERISA as follows:
"`In recent years, the Committee has received numerous complaints and inquiries from Members of Congress and their constituents about improper denials of medical claims, improper denials of continuation coverage, or unreasonable delays in processing claims by employers or insurers. Participants in ERISA-covered employee benefit plans that have been treated in this manner are concerned that the Supreme Court's interpretation of ERISA (particularly as articulated in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549 [95 L.Ed.2d 39] (1987)) as preempting state laws that authorize punitive or other extra-contractual damages in connection with claims for benefits effectively denies them legal recourse. The Committee shares their concern. In Pilot Life, the Supreme Court held that state common law claims against an insurance company for breach of contract and bad faith arising out of an improper denial of *912 disability benefit claims under an ERISA-covered plan were preempted. In addition, the Supreme Court declined to fashion a federal common law remedy for improper processing of benefit claims[,] holding that ERISA's civil enforcement provisions under Section [1132], were intended to be the exclusive remedies afforded to plan participants and beneficiaries. The Committee disagrees with this latter conclusion. The Committee believes that the legislative history of ERISA and subsequent expansions of ERISA support the view that Congress intended for the courts to develop a federal common law with respect to employee benefit plans, including the development of appropriate remedies, even if they are not specifically enumerated in Section 502 [29 U.S.C. § 1132] of ERISA. Since the issue of preemption and civil remedies under ERISA is within the exclusive purview of the labor committee of Congress, the Committee has, over the years, considered the option of amending the statute to encompass specifically several additional remedies. In light of the legislative history on this issue, however, the Committee believes such action is unnecessary. The Committee reaffirms the authority of the Federal Courts to shape legal and equitable remedies to fit the facts and circumstances of the cases before them, even though those remedies may not be specifically mentioned in ERISA itself. In cases in which, for instance, facts and circumstances show that the processing of legitimate benefit claims has been unreasonably delayed or totally disregarded by an insurer, an employer, a plan administrator, or a plan, the Committee intends the Federal Courts to develop a federal common law of remedies, including (but certainly not limited to) the imposition of punitive damages on the person responsible for the failure to pay claims in a timely manner.'

"H.R.Rep. No. 801, 100th Cong., 2d Sess, p. 2, at 63 (1988) (emphasis added [in Haywood]).
"The Supreme Court, in Ingersoll-Rand, has now specifically held that the courts are authorized to award damages, both extracontractual, and even punitive, where the facts support them, even though they are not specifically provided for in ERISA. In doing so, it simply correctly carries out the intent of Congress in passing ERISA.
"State courts, with concurrent jurisdiction of ERISA actions, likewise possess such authority. In this case, the cause of action stated happens to be one specifically provided for in ERISA, so the trial court need not go beyond the Act itself to formulate a remedy for the wrong allegedly done the plaintiff. Ingersoll-Rand, of course, would authorize recovery even if the relief sought were not expressly provided for in the Act. Therefore, we reverse the judgment and remand the cause and permit the plaintiff to attempt to state a claim under § [1140].
"In recognizing that ERISA permits such actions, the Supreme Court of the United States acknowledged that the polestar of any legislation is legislative intent. The Congress of the United States could not have intended to strip from beneficiaries of pension and employee benefit plans all of the protections long afforded by state common law and not to provide a statutory replacement for those state common law protections. Certainly it would not have done so in the guise of passing legislation to protect the very persons whose rights were the focus of the legislation. The fact that the statutory rights bear many of the characteristics of the state remedies that the Act preempted is not unusual. In Alabama the legislature has adopted statutes providing remedies for medical and legal malpractice. Ala.Code 1975, § 6-5-480 et seq.; § 6-5-570 et seq. These statutory causes of action bear a striking resemblance to the common law actions they replaced. In specifically authorizing the courts to develop remedies not specifically provided for in ERISA, the Supreme Court now recognizes the possibility of recovery of tort-like damages in ERISA cases."
Haywood 584 So.2d at 1295-98. (Emphasis added except as noted.)
*913 Since Haywood was decided, a number of courts have discussed Ingersoll-Rand and have reached varying conclusions as to its meaningsome cases concluding that it does not authorize extracontractual or punitive damages, see e.g., Harsch v. Eisenberg, 956 F.2d 651 (7th Cir.), cert. denied, ___ U.S. ___, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992); McRae v. Seafarers' Welfare Plan, 920 F.2d 819 (11th Cir.1991); Zimmerman v. Sloss Equipment, Inc., 835 F.Supp. 1283 (D.Kan. 1993); Roberts v. Thorn Apple Valley, Inc., 784 F.Supp. 1538 (D.Utah 1992); and others concluding that Ingersoll-Rand does authorize such remedies; see, e.g., East v. Long, 785 F.Supp. 941 (N.D.Ala.1992) (per Acker, J.); International Union, United Automobile, Aerospace & Agricultural Implement Workers v. Midland Steel Prods. Co., 771 F.Supp. 860 (N.D.Ohio 1991); cf. Lawrence v. Jackson Mack Sales, Inc., 837 F.Supp. 771 (S.D.Miss.1992) (some species of extracontractual damagesbut not punitive damagesare recoverable under ERISA). However, this Court still understands Ingersoll-Rand as it did when it released Haywood. Therefore, the Weemses' ERISA claims are not defective for the reason on which the trial court's summary judgment expressly rests, namely, that ERISA does not authorize recovery of punitive damages, or of extracontractual damages. The judgment of the trial court, to the extent that it so held, is reversed.

III. Jury Trial
The resolution of the issue addressed in Part II, supra, also essentially disposes of the issue presented in the final portion of the partial summary judgment, that is, whether the Weemses have a right to a trial by jury on their ERISA claims. This conclusion follows, because the right to recover compensatory and punitive damages "leads inexorably to the right of trial by jury," as guaranteed by U.S. Const. amend. VII. Haywood, 584 So.2d at 1298.
In opposition to this proposition, Jefferson-Pilot relies on Ex parte Gurganus, 603 So.2d 903 (Ala.1992) (per Houston, J., with one Justice concurring, five Justices concurring in the result, and one Justice concurring in part). However, Gurganus held only that an action brought pursuant to § 1132(a)(1)(B),[2] to determine the insurer's right to cancel an ERISA-regulated plan, was equitable in nature, and, consequently, did not carry a right to a trial by jury. Although the author of Gurganus also suggested that Alabama courts are bound by the statutory construction employed in the Court of Appeals for the Eleventh Circuit, which holds that plaintiffs are not entitled to a jury trial on claims brought pursuant to § 1132(a)(1)(B), Blake v. Unionmutual Stock Life Ins. Co. of America, 906 F.2d 1525 (11th Cir.1990), that view was shared by only one other Justice, and, consequently, does not represent the position of this Court or represent binding precedent.
On the contrary, the correct rule, briefly stated, is that "[t]his Court may rely on a decision of any federal court, but it is bound by the decisions of the United States Supreme Court." Gurganus, 603 So.2d at 908 (Shores, J., concurring specially) (emphasis in original); see also Amerada Hess Corp. v. Owens-Corning Fiberglass Corp., 627 So.2d 367, 373 n. 1 (Ala.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1610, 128 L.Ed.2d 338 (1994). This rule is especially applicable if Eleventh Circuit doctrine conflicts with the law as expressed in cases decided in the other circuits. Id. Cf. Sullivan v. LTV Aerospace & Defense Co., 850 F.Supp. 202, 214 (W.D.N.Y.1994) (ERISA plaintiff "seeking legal relief" is entitled under the Seventh Amendment to a jury trial); International Union, United Automobile, Aerospace & Agricultural Implement Workers v. Midland Steel Prods. Co., 771 F.Supp. 860, 865 (N.D.Ohio 1991) (ERISA plaintiffs "seeking punitive or compensatory damages, remedies at law, ... are entitled under the Seventh Amendment to a trial by jury"); McDonald v. Artcraft Electric Supply Co., 774 F.Supp. 29, 36 (D.D.C.1991) (ERISA plaintiffs seeking "traditional legal relief" are *914 entitled under the Seventh Amendment to a trial by jury); Gangitano v. NN Investors Life Ins. Co., 733 F.Supp. 342 (S.D.Fla.1990) (Seventh Amendment requires a jury trial in actions seeking legal relief, pursuant to § 1132(a)(1)(B)); Vicinanzo v. Brunschwig & Fils, Inc., 739 F.Supp. 882 (S.D.N.Y.1990).
The trial court, to the extent it concluded that a plaintiff is never entitled to a jury trial on claims brought pursuant to § 1132(a)(1)(B), erred. Therefore, that portion of the partial summary judgment so holding is reversed.[3]
In summary, the judgment is affirmed to the extent it held that the state-law claims were preempted by ERISA. The judgment is reversed to the extent it held that ERISA does not authorize recovery of punitive damages or of extracontractual damages and to the extent it held that a plaintiff is never entitled to a jury trial on claims brought pursuant to § 1132(a)(1)(B). The judgment of the trial court is, therefore, affirmed in part and reversed in part. The cause is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES, KENNEDY, and INGRAM, JJ., concur.
MADDOX and HOUSTON, JJ., concur in part; concur in the result in part; and dissent in part.
HOUSTON, Justice (concurring in part; concurring in the result in part; and dissenting in part).
I concur with that portion of the opinion that holds that the state law claims were preempted by ERISA. That holding is consistent with my understanding of the law since 1989. See HealthAmerica v. Menton, 551 So.2d 235, 249-56 (Ala.1989) (Houston, J., dissenting). I concur in the result as to that portion of the opinion that reverses the judgment to the extent that the opinion holds that ERISA does not authorize the recovery of punitive damages or damages in excess of those provided for by the contract. Haywood v. Russell Corp., 584 So.2d 1291, 1298-99 (Ala.1991) (Houston, J., concurring specially). I dissent from that portion of the majority's opinion that holds that the Weemses are entitled to a jury trial on claims brought pursuant to § 1132(a)(1)(B). Blake v. Unionmutual Stock Life Ins. Co. of America, 906 F.2d 1525 (11th Cir.1990); Ex parte Gurganus, 603 So.2d 903 (Ala.1992).
MADDOX, J., concurs.
NOTES
[1] For coverage of his wife Julia, Willard Weems authorized deductions from his wages at the rate of approximately $33 per month.
[2] Section 1132(a)(1)(B) provides that "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan."
[3] We must reiterate that we express no opinion as to the validity of the merits of the Weemses' claims. Our discussion in this case must be construed as confined to the precise grounds on which the trial court expressly based its summary judgment. This approach is particularly appropriate in view of the fact that these grounds are the only ones fully developed in the parties' briefs.